## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **NATHANIEL HOWARD MOONE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:21CV00472 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **STEVE HERRICK, ET AL.,** | ) | Judge James P. Jones |
| | ) | |
| Defendants. | ) | |

*Nathaniel Howard Moone, Pro Se Plaintiff; Megan L.O'Brien, Assistant Attorney General, Criminal Justice & Public Safety Division, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Herrick, Fuller and Ross; Rosalie Pemberton Fessier and Brittany E. Shipley, TimberlakeSmith, Staunton, Virginia, for Defendant Dr. Ohai.*

The plaintiff, Nathaniel Howard Moone, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth Amendment rights when they were deliberately indifferent to his need for proper medical treatment for his hip pain and foot pain.  Defendants Herrick, Fuller, and Ross (collectively the Nonmedical Defendants) have filed a motion to dismiss all claims against them, and defendant Dr. Ohai has filed a separate motion for summary judgment.  Moone has filed a joint opposition to both motions, and Dr. Ohai has filed a reply.

Finding the matters ripe for disposition, I conclude that the defendants' dispositive motions must be granted for the reasons discussed herein.  In particular,

Moone's complaint fails to allege adequate personal involvement by defendants Herrick and Fuller and fails to include facts to plausibly allege that defendant Ross was deliberately indifferent. As for the claims against Dr. Ohai, the summary judgment record would not allow a reasonable jury to find in Moone's favor.

## I. BACKGROUND.

### A. Plaintiff's Allegations.

At the time Moone's claims arose, he was confined at Buckingham Correctional Center (BKCC), a Virginia Department of Corrections (VDOC) facility, where he remains. At all relevant times, Defendant Herrick was the Director of VDOC Health Services, Defendant Fuller was the Associate Director of VDOC Health Services, Defendant Ross was a Major at BKCC, and Dr. Ohai worked as a physician at BKCC.

Moone's Verified Complaint alleges that he started experiencing pain in the balls of his feet in approximately May 2018, after his "personal shoes had worn," and he was issued VDOC boots. Compl. 4, ECF No. 1. The pain got worse when Moone began working in the kitchen, where he was required to stand for longer periods.

Moone was evaluated by Dr. York, a BKCC physician, who examined his feet and had X rays taken of Moone's hips and knees. Dr. York told Moone that he may have developed plantar fasciitis, in part as a result of his "complete flat feet." *Id.*

He referred Moone to an outside podiatrist and orthopedist. Eventually, Moone received orthopedic footwear with custom insoles. According to the complaint, both Dr. York and an outside physician told Moone that the lack of support to his feet was causing his pain and also contributing to the degenerative condition of his right hip.

After Dr. Ohai arrived at BKCC in November 2019, Moone made multiple requests to have his shoes and boots replaced due to "wear and tear" and to have a hip injection to help with the pain in his right hip. *Id.* at 5. These requests were repeatedly denied. Moone eventually filed this lawsuit in September 2021. At that time, he already had been referred for an outside orthopedic consult by another BKCC medical provider, and he underwent total hip replacement surgery on his right hip in December 2021.[1] Moone does not complain about his medical treatment subsequent to the surgery, although it appears he has not been provided new custom shoes or insoles.

With regard to Moone's allegations against the Nonmedical Defendants, the

---

[1] Although Dr. Ohai's declaration references treatment of Moone by other providers, neither he nor Moone identify by name any other health care providers who saw Moone during the relevant time-frame, and the handwritten names in Moone's medical chart are often difficult to read. Thus, this opinion does not include names of the other providers. Also, when the opinion court refers to Moone being seen by a "provider," it means a physician, nurse practitioner, or physician assistant who is "a clinician trained to diagnose and treat patients." Ohai's Mem. Supp. Ex. A., Ohai Decl. Ex. B at 3, ECF No. 23-1 (setting forth VDOC's definition of a health care practitioner). When the opinion states that Moone was seen in the medical department, it means he was seen by a nurse or other non-provider.

Verified Complaint's sole reference to Herrick and Fuller is an allegation that they were responsible for promulgating unconstitutional policies regarding the treatment of flat feet.[2]  *Id.* at 8.  The policy that Moone challenges as unconstitutional is VDOC Operating Procedure (OP) 750.3, titled "Prostheses."  Id. at Ex. C at 16–18, ECF No. 1-1.  He claims that OP 750.3 "forbade preventative measures in cases such as Moone's, . . . even when daily activities are affected" and cause chronic pain.  Mem. Resp. Mot. Summ. J. 12, ECF No. 27.

That policy includes orthopedic shoes within the definition of an "prosthesis or orthotic."  Ohai Decl. Ex. B at 1–6, ECF No. 23-1.  It provides that a prosthesis or orthotic "will be made available only by order of a Health Care Practitioner" and that it "should be made available to an offender if failure to do so will result in deterioration of the offender's health while incarcerated."  *Id.* §§ 1.A., 1.C.  The policy also clarifies that "calluses, warts, corns, and flat feet are not indications for special shoes."  *Id.* § II. F.3.  Where an offender seeks "[r]eplacement of previously prescribed 'special' shoes that were ordered by an orthopedic specialist," he should be referred to the medical department for evaluation.  *Id.* § II. F.4.

Moone also faults Herrick and Fuller for denying his grievance appeals.  Mem.

---

[2]  Moone also references unconstitutional policies related to "gunshot wounds," but does  not otherwise explain or reference any specific policy.  Furthermore, he points to no medical evidence that his prior gunshot wound, which apparently was located in his back, contributed to any foot, knee, or hip pain.

Resp. Mot. Summ. J. 12, ECF No. 27.  Specifically, in June and July of 2021, Moone filed several written complaints and grievances requesting that his orthopedic shoes be replaced and that he receive a hip injection.

Moone's complaint also references a particular event involving Major Ross that occurred in July 2021.  Moone alleges that, at some point after Dr. Ohai's denial of treatment in December 2020, the pain had become unbearable and he had "excessive fluid" on his ankles, feet, and knees.  Compl. 6, ECF No. 1.  He went to medical at one point even though he did not have an appointment and was turned away.  He then showed Major Ross his swollen feet and knees, and Major Ross told medical that they needed to see Moone.  *Id.* at 6–7.  It was then that Moone was seen by a provider and was given medication and compression socks to wear.  His condition did not improve, however, and he alleges that no further treatment was given at that time.  Moone grieved the issue, but Major Ross found the grievance unfounded and later told Moone that there was nothing he could do because he was security staff, not medical staff.

For relief, Moone requests declaratory relief and injunctive relief that directs defendants to give him medical shoes, provide him with "hip replacement 'stem-cell' surgery," and "stop using budget issues as a means to deny medical treatment." *Id.* at 9.  He also requests compensatory and punitive damages.  *Id.*

B.  Plaintiff's Medical Treatment by Dr. Ohai and Others.

Dr. Ohai, a physician who has been providing medical treatment to inmates at BKCC since November 2019, has submitted a sworn declaration that includes the relevant portion of Moone's medical records.   To be referred to Dr. Ohai, an inmate must be placed on the sick call list by the BKCC nurses, who receive complaints and screen requests for medical care to determine whether a physician's treatment is necessary.  Only rarely, if ever, does Dr. Ohai review inmate requests or informal complaints.

Dr. Ohai was first made aware of Moone's complaints of hip pain on January 10, 2020, when a nurse consulted with him on the prudence of steroidal hip injections for Moone.[3]  On that date, Moone was seen in medical and asked for a right hip injection to assist with pain and his range of motion.  Ohai Decl. ¶ 8, ECF No. 23-1. Moone's records reflected that he had severe osteoarthritis of the right hip, and he had last received an injection on May 23, 2019.  Dr. Ohai agreed that an injection might reduce Moone's pain, and so he referred Moone to an outside provider for one.  An appointment for an injection was scheduled for February 5, 2020, although it was then delayed due to the COVID-19 crisis.  *Id.* ¶¶ 7–8.

---

[3]  Moone's medical records include a nurse's note from November 13, 2019, the day after Dr. Ohai began working at BKCC, in which the nurse stated she planned to discuss a hip injection with him.  But Dr. Ohai has averred that he was not consulted until January 10, 2020, and Moone has not presented any evidence to dispute that fact.

Dr. Ohai had no further involvement with Moone's care until October 2020. From January to October, Moone complained of right hip pain at least on two occasions, and was seen by a nurse or treated by another provider.  On the first occasion, in February 2020, he saw a nurse and then a nurse practitioner after complaining about his hip pain and the fact that his orthotic shoes were falling apart. X rays were ordered of his left hip.  *Id.* at Ex. A at 30–33, ECF No. 23-1.  On the second occasion, he was seen by the same nurse practitioner on June 8, 2020, when he asked again for a hip injection, because his February 2020 appointment had been cancelled and not yet rescheduled.  He was prescribed several medications, including Cymbalta, Tylenol, Celebrex, and capsaicin cream.  *Id.* at 34.

Moone complained again about his right hip pain at the end of September 2020, stating that it had started getting worse a week ago and that the medications were "not helping anymore."  *Id.* at 35.  He was referred to Dr. Ohai, who reviewed portions of Moone's chart on October 1, 2020.

Upon his review, Dr. Ohai learned the following background about Moone's medical history, all of which he then noted in Moone's medical chart:

- Moone had a history of chronic bilateral foot pain.  He was working in the kitchen and on his feet all day.  He was fitted for custom shoes and inserts on August 13, 2018, and September 21, 2018.

- In July 2017, Moone's left hip X rays were normal.  Moone had been diagnosed with moderate to severe osteoarthritis of the right hip, based on his last right hip X rays, performed on November 17, 2017.  His left hip showed minimal degenerative changes as of March 6, 2020.

- Moone had a right hip injection in December 2017 and about a year later, an orthopedic surgeon recommended another injection for Moone, which he received on May 23, 2019.  Moone had been scheduled for a third hip injection in February 2020, but that had been delayed because of the COVID-19 crisis.

- In November 2019, Moone was measured for replacement custom boots because his old shoes were worn.[4]

Ohai Decl. ¶ 9 & Ex.  A at 36, ECF No. 23-1.

After reviewing Moone's chart, Dr. Ohai then ordered updated X rays and labs to determine the extent of his condition and what courses of treatment would be appropriate.  He also directed that Moone be scheduled for a doctor's appointment with him in two to three weeks to determine the "necessity for shoes renewal."  Ohai Decl. ¶ 9.  Despite the instructions that an appointment be scheduled within that time-frame, Moone was not scheduled to see Dr. Ohai until December 2020.

On October 7, 2020, Moone had his X rays.  The following day, he was informed that his X rays would require further testing or monitoring, although Dr. Ohai was not involved in that encounter.  Moone's labs also were drawn and revealed that Moone was pre-diabetic and had hyperlipidemia.  Dr. Ohai did not review the

_____

[4]  The record is unclear as to whether Moone ever actually received this footwear, although it does not appear that he did.  Moreover, Moone's primary focus in his opposition to the summary judgment motion seems to be on Dr. Ohai's failure and delays in providing him with orthopedic shoes or footwear.  Perhaps this is because he already had received his hip replacement surgery at the time of his opposition.  In any event, he contends that delaying him access to medical footwear causes unnecessary pain to his feet and hip "still to this day."  Mem. Resp. Mot. Summ. J. 8, ECF No. 27.

lab report until his December 22, 2020 appointment with Moone.

On October 16, 2020, Moone was seen in medical by another provider, for an evaluation of his ongoing hip pain secondary to moderate osteoarthritis. The provider noted that Moone would be referred to Dr. Ohai.

On December 8, 2020, Moone was placed on Dr. Ohai's sick call list in relation to his claims in this suit. The appointment was scheduled for December 22, 2020. According to Moone, Dr. Ohai told him during this visit that VDOC will not be "sending any inmates to visit outside providers and that having a hip replacement isn't a serious need during COVID." Compl. 5, ECF No. 1. Dr. Ohai also told him that his prior gunshot wound and flat feet are not serious medical needs, and he further stated that he could not renew Moone's "past treatments" because of budget restrictions. *Id.* at 6.

Dr. Ohai describes the December 22, 2020 encounter differently, and his testimony is entirely consistent with the contemporaneous notes in Moone's medical record. Ohai Decl. Ex. A at 45, ECF No. 23-1. He states that he noted Moone had moderate to severe osteoarthritis in the right hip and mild osteoarthritis in the left hip. Moone reported that he had run out of pain medication on December 6, 2020. He requested another right hip steroid injection and special shoes to replace his worn out shoes. Dr. Ohai discussed his lab results and explained to him that his "hyperlipidemia and pre-diabetes mellitus status were contraindications for a

steroidal hip injection, [which] could increase [Moone's] blood sugar and trigger full-blown diabetes."  Ohai Decl. ¶ 15, ECF No. 23-1.

Dr. Ohai also told Moone that he did not meet VDOC's criteria for custom shoes based on his chronic hip and back pain symptoms because he did not manifest any functional limitations.  He renewed plaintiff's medications for Cymbalta, Celebrex, and capsaicin.[5]  He further determined that there was no current medical indication for an orthopedic follow-up because plaintiff's condition was being adequately managed at BKCC.  In conjunction with the note stating that there was no medical need for an orthopedic follow-up, Dr. Ohai included a notation referencing the "Covid crisis."  *Id*. at Ex. A at 45.  Although this suggests that the Covid crisis may have been discussed in conjunction with Dr. Ohai's declining to refer Moone to an orthopedist, the notes themselves state that there is no "medical indication" for an orthopedic consult.  *Id.* After that appointment, Dr. Ohai did not have any role in Moone's care from that December 2020 appointment until November 2021.

In the interim, Moone continued receiving treatment from other providers. This includes being seen either by a nurse or provider in April, May, June, July, August, and September.  During these appointments, he continued to complain of

_____

[5] Dr. Ohai's declaration noted that all three medications would be renewed, but the next paragraph of his declaration states that he renewed the first two, but not the capsaicin. He does not explain the discrepancy.

-10-

hip pain, ask for hip injections, and requested orthotic shoes.  He also was seen in May after he complained of new onset pain and edema to both knees.  Throughout this period, he was examined and evaluated, prescribed different medications and was referred for X rays, and he was given compression socks.  He also was advised as to other conservative measures, including elevating his legs, engaging in certain exercises to promote joint function, and losing weight.  There are also several notations that Moone would be referred to Dr. Ohai (including appointments in May and June).  But again, no one scheduled an appointment with Dr. Ohai until November 2021.

In July, a provider referred Moone to an outside orthopedist, and his appointment with an orthopedic surgeon was scheduled for September 13, 2021.  In early September, after his appointment had been scheduled but before it occurred, Moone signed and submitted his complaint in this case.

On September 13, 2021, Moone was seen by VCU orthopedic surgery for complaints of chronic right hip groin pain and intermittent bilateral knee pain and swelling.  At that appointment, he reported that he had been seen by an orthopedist specialist before the COVID-19 pandemic.  He reported that the prior specialist had told him he had severe arthritis in his hip and would need a hip replacement, although there is no indication of that recommendation in Moone's chart.  He also told the surgeon that injections did not provide relief, and that his pain, which he rated as 8

out of 10, was constant.

The VCU physician had X rays taken, which showed "moderately severe secondary degenerative arthritic changes" and "mild to moderate bilateral knee degenerative arthritis." Ohai Decl. ¶ 31. The treatment options included cortisone injections, pain management, or right total hip replacement surgery.[6] Orthotics were not recommended. Moone chose what Dr. Ohai calls "elective hip replacement surgery" after being informed of the many complications.

On November 15, 2021, Moone's surgery was scheduled for December 13, 2021. Thus, by November 18, 2021, the date Moone met with Dr. Ohai for his second appointment, he had already had his orthopedic consult, and the elective total hip replacement surgery had been scheduled.

Both prior to and after the surgery, Dr. Ohai took various steps to ensure that Moone was ready for surgery, such as adjusting his medications; that he was properly monitored and treated afterward; and that he followed up with the surgeon. *Id.* ¶¶ 38–46. According to Dr. Ohai, Moone "recovered from his surgery well without major complications." *Id.* ¶ 46, ECF No. 23-1. During a December 21, 2021 appointment, Moone expressed no complaints to Dr. Ohai and stated that his hip pain was minimal. Neither the Complaint (which predated the surgery) nor

---

[6] Dr. Ohai notes that there is no indication that the outside physician considered Moone's pre-diabetes status in recommending cortisone injections, which is a contraindication for a steroidal hip injection. Ohai Decl. ¶¶ 15, 31.

Moone's opposition to the dispositive motions faults Dr. Ohai for anything having to do with the surgery or his care afterward.

Dr. Ohai's declaration — which is reiterated in his statement of undisputed facts — summarizes his own treatment of Moone and provides reasons for his treatment decisions.  He explains:

> 49.   I was not deliberately indifferent to Plaintiff's foot condition.  As presented to me, Plaintiff experienced some foot pain that I attributed to his long hours working in the kitchen. Plaintiff never presented to me with severe foot pain or reported that his foot pain was significant or affected his ability to function. There is no indication in Plaintiff's chart that he suffered effusion to his feet or ankles. Plaintiff claims that he was told by another physician, Dr. York, that a combination of flat feet and a gunshot wound may have caused him to develop plantar fasciitis. Prior to this lawsuit being filed, I was not aware that Plaintiff had previously been diagnosed with plantar fasciitis and had no knowledge that Plaintiff had a gunshot wound. None of Plaintiff's records that I reviewed reflected these findings. Reviewing Plaintiff's record, it does not appear Dr. York ever attributed Plaintiff's plantar fasciitis to a gunshot wound but he did attribute Plaintiff's back pain to a gunshot wound to Plaintiff's back from 1998. Plaintiff's condition as presented to me did not indicate Plaintiff suffered from plantar fasciitis, flat feet, or a gunshot wound.

> 50.   Regardless, when it was brought to my attention that Plaintiff was experiencing pain, I ensured he had access to pain medication or medication to treat the underlying condition. As reported to me, Plaintiff already had orthotic shoes but was not happy with their condition. He was able to purchase soft soled shoes and premium boots from the commissary if in stock if he was not happy with the shoes he had. I exercised my professional judgment in deciding that orthotic shoes or boots were not necessary to treat Plaintiff's foot pain as I was not made aware of any functional limitations or a serious medical need caused by Plaintiff's foot pain.

51. I was not deliberately indifferent to Plaintiff's hip condition. I was not aware of his hip pain until January 2020 when a nurse consulted me about hip injections. I agreed that an injection may be helpful and Plaintiff was then scheduled to receive one. He was not scheduled to see me and I had no other personal involvement in his relevant treatment until October 2020. I then reviewed portions of his record relevant to past treatment of his hips. Seeing that his x-rays were dated, I ordered new x-rays that were performed soon thereafter. I also placed an order for Plaintiff's labs. At this time, he already had orders for pain medication. I instructed he come to the clinic in three weeks, however nursing staff did not schedule him to see me until December 22, 2020. At that time, I reviewed his labs and determined a hip injection was contraindicated by his pre-diabetes and hyperlipidemia conditions. I ensured he had active prescriptions for pain medication, arthritis medication, and/or topical arthritis cream when medically appropriate. He did not exhibit or report to me severe pain or functional limitations because of his hip condition. For these reasons, in my professional judgment, it did not appear that an orthopedic consult or orthotic shoes or boots were necessary at the time. Plaintiff did not request hip replacement surgery from me, but even if he did, his condition did not seem to warrant hip replacement surgery, a major procedure with potentially life-threatening complications. There do not appear to be any notes in Plaintiff's file recommending hip replacement surgery prior to this visit.

52. Plaintiff was not scheduled to see me again until November 18, 2021, after he had received additional x-rays and had been seen by an orthopedic surgeon and scheduled for hip replacement surgery. I was not made aware of any worsening hip pain or knee complications until this time. Plaintiff chose to forego conservative treatment measures and scheduled elective hip replacement surgery for December 13, 2021.

53. I addressed Plaintiff's medical needs presented to me at the time. I did not refuse to treat his feet or hips. Before and between visits with me, Plaintiff was regularly seen by other providers. Plaintiff's medical needs were not ignored.

*Id*. ¶¶ 49–53.  His affidavit also sets forth the dates for which Moone was prescribed medication for pain as well as medication for his arthritis, which was throughout nearly all of the relevant time-period.  *Id.* ¶¶ 47–48.

## II.  DISCUSSION.

### A.  Standards of Review.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.[7]  Moreover, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A court should grant summary judgment under Rule 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if

---

[7]  I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Dr. Ohai has filed a supporting declaration and documentation, to include

Moone's medical records. Accordingly, to avoid summary judgment, Moone must

present sufficient evidence that could carry the burden of proof of his claims at trial.

*Id.* He "may not rest upon the mere allegations or denials of his pleading, but must

set forth specific facts showing that there is a genuine [factual] issue for trial" on

which the jury could find in his favor. *Anderson*, 477 U.S. at 248.

Moone's opposition to the summary judgment motion includes some records,

which I have considered, but it does not include an affidavit and is otherwise

unverified. Thus, the opposition itself is not summary judgment evidence. Because

his complaint is verified, however, I consider the allegations therein, if based on

personal knowledge, as offered in opposition to summary judgment. *Williams v.

Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that a pro se litigant's verified

complaint must be considered as an affidavit and may, standing alone, defeat a

motion for summary judgment when the allegations contained therein are based on personal knowledge).   "[U]nsupported speculation is not sufficient to defeat a summary judgment motion," however.  *Baber ex rel. Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

### B.  Deliberate Indifference Under the Eighth Amendment.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017).  To hold an official liable under § 1983, the plaintiff must state facts to affirmatively show that the officer acted personally to deprive the plaintiff of, or violate, his constitutional rights.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

Moone argues that all of the defendants knew of his need for medical treatment and denied or interfered with his access to it, in violation of his Eighth Amendment rights.  The Eighth Amendment's protections against cruel and unusual punishment include a right to the medical care necessary to address an inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  Specifically, "a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment."  *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).

To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57. The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). It is not sufficient to show that an official should have known of a risk. He or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk of harm posed by the official's action or inaction. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Moreover, the "deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to provide medical care, or mere disagreement concerning questions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished). Indeed, a healthcare provider's treatment will not qualify as deliberate indifference unless it

is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

### 1. The Nonmedical Defendants.

The Nonmedical Defendants (Herrick, Fuller, and Ross) seek dismissal of Moone's claims for failure to state a claim. Moone seeks to hold Herrick and Fuller liable because they promulgated a policy that Moone says resulted in the denial of treatment and because they denied his grievances.

First of all, the mere fact that Herrick or Fuller promulgated a policy concerning custom footwear is insufficient personal involvement to state a claim against either. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Moone has not alleged any facts that would show that either Herrick or Fuller knew about his serious medical condition, let alone that they acted with deliberate indifference toward any medical need of his. In the absence of allegations of deliberate indifference, any individual-capacity claim must be dismissed.

To the extent the challenge to the footwear policy is properly viewed as an

official-capacity claim,[8] Moone must allege that the entity's "policy or custom . . . played a part in the violation of federal law." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016). Moone has not plausibly alleged this.

Importantly, the policy on which Moone seeks to hold Herrick and Fuller liable does not preclude Moone from obtaining orthopedic shoes. Instead, in his case—and as he notes—he was evaluated for possible orthopedic shoes because he had previously been given some by Dr. York. And the policy simply says that, after that evaluation, orthopedic shoes will be provided if a healthcare provider, such as a physician, determines that they are medically necessary. Thus, the VDOC-wide policy leaves the decision as to whether an inmate is eligible for orthopedic shoes to the physicians and other medical providers at individual facilities.

Here, the court has found no violation by Dr. Ohai, but regardless, the terms of the challenged policy itself make clear that a physician has the authority to order orthopedic shoes for an inmate. Put differently, the policy itself is not the cause of the denial in Moone's case.[9] Because the policy did not cause any violation of his

---

[8] In his opposition, Moone cites to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and the Fourth Circuit has described an official-capacity suit as incorporating the "policy or custom" language of *Monell*. *King*, 825 F.3d at 223.

[9] Because this issue is raised in the context of a motion to dismiss, Dr. Ohai's declaration may not be considered. But he notes as much. Ohai Decl. ¶ 50, ECF No. 23-1 (explaining that he exercised his professional judgment in denying Moone orthotic shoes).

rights, any claims against Herrick and Fuller in their official capacity, based on the policy, fail as a matter of law.[10] *Id.*

To the extent that Moone is attempting to hold Herrick or Fuller responsible for denying his grievances, he likewise has failed to state a claim. First of all, "a prison official's act of responding to a grievance generally does not cause or contribute to a constitutional violation" particularly when the grievance complains of past or completed misconduct. *Hoglan v. Robinson*, No. 7:16-CV-00595, 2022 WL 909041, at *2 (W.D. Va. Mar. 28, 2022) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). When a grievance alleges an ongoing violation of an inmate's right, however, and the official reviewing the grievance has the power to remedy it, then that official may be liable for a constitutional violation. *Id.* at *2–*3 (citing *Wrightv. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)).

Here, Moone's grievances alleged an ongoing lack of medical care, but he has not pled that either Herrick or Fuller could dictate treatment for him. Indeed, OP 750.3 leaves the decision as to whether to provide orthopedic shoes with the medical providers at individual facilities. Without their having any authority to remedy the problem, they cannot be held responsible for a constitutional violation simply for denying a grievance.

---

[10] Nor has Moone asserted facts sufficient to impose supervisory liability on either Herrick or Fuller. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (setting forth elements required to hold a supervisor liable under such a theory).

Viewed differently, Herrick and Fuller were not his treating providers, and Moone's grievances were denied after it was shown that he was being treated by BKCC's medical department for the issues about which he was complaining.  In that scenario, Herrick and Fuller are entitled to rely on the judgments of medical personnel as to whether Moone requires different or additional treatment. *Miltier*, 896 F.2d at 851, (holding that non-medical supervisory prison officials are entitled to rely on professional judgment of trained medical personnel).  For all of the above reasons, the claims against Herrick and Fuller must be dismissed.

With regard to Major Ross, his interactions with Moone included one in which he saw Moone's swollen feet and asked the medical department to see Moone, which they did, apparently quickly.   That conduct was the opposite of deliberate indifference, in that Major Ross promptly ensured that Moone was seen by a healthcare provider.  He did not ignore Moone's medical needs or fail to respond to them, nor was his conduct "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.

Moone also complains that Major Ross denied the grievance he submitted after that appointment, apparently sometime in late July 2021.  Compl. 7, ECF No. 1; Mem. Resp. Mot. Summ. J. Ex. BB, ECF No. 27-1 (grievance response signed by Ross); Compl. Ex. B, ECF No. 1-1 (inmate request from Moone, on which Ross

responded that his grievance was determined to be unfounded).  In that grievance, Moone had complained that the treatment he had received  — consisting of medication and compression socks — was not working.

Major Ross is not a medical provider and, as he stated in his response to Moone's grievance, medical care is determined by the medical department.  As a non-medical official, Ross was entitled to rely on the professional judgment of medical providers to determine what treatment is proper for an inmate.  *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008); *Miltier*, 896 F.2d at 851 (holding that non-medical supervisory prison officials are entitled to rely on professional judgment of trained medical personnel).  As the Fourth Circuit has explained, "a nonmedical prison official can generally defer to the decisions of prison medical personnel at the institutional level." *Gordon*, 937 F.3d at 358.  Thus, where "a prisoner is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." *Iko*, 535 F.3d at 242.

Accordingly, Moone has not alleged an Eighth Amendment violation against Major Ross.

For the above reasons, I conclude that the allegations in the complaint fail to state plausible claims of deliberate indifference against these defendants.  Therefore, I will grant the Nonmedical Defendants' Motion to Dismiss, and the claims against them will be dismissed.

*2. Dr. Ohai.*

Turning next to Dr. Ohai's summary judgment motion, and having reviewed the summary judgment record, I conclude that no reasonable jury could find in Moone's favor as to his claim against Dr. Ohai.

Dr. Ohai argues first that Moone did not have a serious medical need for treatment of his feet. Mem. Supp. Mot. Summ. J. 18–19, ECF No. 23. He notes that Moone only reported foot pain, which he contends is not a serious medical need. He also cites to a number of cases for the proposition that neither flat feet nor plantar fasciitis are serious medical conditions. *Id.* Moone counters that he experienced continuing pain in his feet and that he previously had been recommended for — and given — orthopedic shoes by Dr. York.

For purposes of this opinion, I assume, without deciding, that Moone presented with serious medical needs to Dr. Ohai, both as to his feet and as to his hips. Summary judgment in Dr. Ohai's favor is nonetheless appropriate, because Moone cannot establish that Dr. Ohai was deliberately indifferent to the needs of which he was aware.

There are essentially three potential periods of time to consider in terms of the treatment provided by Dr. Ohai:

1. The time between January 2020, when Dr. Ohai ordered a hip injection, and October 1, 2020, when Dr. Ohai began reviewing Moone's chart in response to continued complaints of hip pain;

2. The time between October 1, 2020, and December 22, 2020, which was Moone's first visit and in-person evaluation by Dr. Ohai; and

3. The time between December 22, 2020, and November 18, 2021, Moone's second visit with Dr. Ohai.[11]

As to the first period, there is no evidence that Dr. Ohai knew — before October 2020 — that Moone had not, in fact, received the hip injection as ordered or that Moone continued to file complaints about his hip pain. Moreover, it also appears that each time he complained, Moone was seen by a nurse or referred to a provider other than Dr. Ohai. He was repeatedly prescribed multiple prescription medications, which were renewed or changed as necessary. Additionally, to the extent that he was requesting shoes during this period, Dr. Ohai was unaware of any such requests. Without any subjective awareness that Moone was continuing to experience pain, Dr. Ohai could not have violated Moone's Eighth Amendment rights during this period.

As to the second period, Dr. Ohai took steps to evaluate Moone's problems upon review of his chart, including ordering X rays and labs. Dr. Ohai also directed that Moone be given an appointment to see him in two to three weeks to determine the necessity for shoes renewal. Through no fault of Dr. Ohai's, Moone was instead scheduled to see him in December 2020. Any delay in treatment for this period is

---

[11]   As noted, Dr. Ohai provided additional treatment prior to and after the hip replacement surgery, but Moone is not alleging that any of that treatment as deficient.

not attributable to Dr. Ohai, nor does the record disclose deliberate indifference by him during this period.

As to the December 22, 2020 appointment and the third period which followed, there are disputes of fact about what Dr. Ohai said to Moone during that visit. But those facts are not material and do not preclude summary judgment in Dr. Ohai's favor. Dr. Ohai avers that, in his professional judgment, hip injections were contraindicated based on Moone's lab work, and that there was no current medical indication for an orthopedic follow-up with any outside specialist. He also states that, although Moone requested orthotic shoes or boots, Dr. Ohai did not believe any were necessary, as Moone did not report severe pain or functional limitations. Dr. Ohai further notes that there is no indication in Moone's chart that he suffered effusion to his feet or ankle. Ohai Decl. ¶ 49, ECF No. 23-1.

Moone essentially contends that Dr. Ohai violated his rights because he failed to follow Dr. York's earlier recommendations. Mem. Resp. Mot. Summ. J. 12, ECF No. 27 ("[T]he Court is bound to credit Dr. York's viewpoint that Moone has a serious medical need by mandating orthopedic footwear [and] steroid injections in preventing further injury with a[n] at-risk individual.").

But the mere fact that Dr. Ohai declined to follow Dr. York's recommendation to provide orthotic shoes or insoles to Moone does not mean that Dr. Ohai was deliberately indifferent. "A mere disagreement between doctors does not establish

that one doctor was deliberately indifferent." *Hogge v. Stephens*, No. 3:09CV582, 2010 WL 3834856, at \*5 (E.D. Va. Sept. 24, 2010) ("A mere disagreement between doctors does not establish that one doctor was deliberately indifferent."), *aff'd*, 469 F. App'x 160 (4th Cir. 2012) (unpublished); *Ballard v. Daniels*, No. 5:16-CT-3012-BO, 2017 WL 1283670, at \*4–5 (Jan. 13, 2017) ("A prison physician is not constitutionally required to follow a specialist's recommendations."), *R. & R. adopted*, 2017 WL 945850 (E.D.N.C. Mar. 10, 2017).

Dr. Ohai has opined that in his professional judgment and based on the information available to him during Moone's appointments, that the shoes were not medically necessary. Again, Moone disagrees, but he has presented nothing other than his own assertion to dispute Dr. Ohai's opinion. Disagreements over the proper treatment, however, do not rise to the level of an Eighth Amendment violation. *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished); *Wright*, 766 F.2d at 849. Instead, if a medical provider has a legitimate medical reason for a certain course of treatment, an inmate's disagreement with the treatment is not sufficient to succeed on an Eighth Amendment claim. *Rush v. Vandevander*, No. 7:08CV00053, 2008 WL 495651, at \*2 (W.D. Va. Feb. 21, 2008) (citing *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)); *Taylor v. Barnett*, 105 F. Supp. 2d 483, 488 (E.D. Va. 2000). Indeed, even if Dr. Ohai was negligent in not providing orthotics, that would not violate the Eighth Amendment. *Johnson v.*

*Quinones*, 145 F.3d 164, 168 (4th Cir. 1998); *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (unpublished) ("[N]egligent medical diagnoses or treatment, without more, do not constitute deliberate indifference.").[12]

The next time that Moone was scheduled to see Dr. Ohai was almost a year later, in November 2021. From the December 2020 appointment through that appointment, Moone saw numerous other providers, and was receiving treatment, although it was conservative treatment. Additionally, by the time Dr. Ohai saw Moone in November 2021, he had been seen by an orthopedic surgeon, who recommended treatment via continued conservative treatment with medications, hip injections (which were contraindicated and which Moone no longer wanted), or hip replacement surgery. Indeed, the surgery already had been scheduled at that point.

As to Moone's hip pain, the overall treatment provided by Dr. Ohai and all of the providers at BKCC does not establish deliberate indifference. He was repeatedly seen, he was given various medications to treat both the pain and the arthritis, and he was followed and had multiple X rays. Even before his second appointment with Dr. Ohai, he had been referred to an outside orthopedic surgeon, and he was ultimately approved for elective total replacement hip surgery. Other courts have

---

[12]   Although Moone's opposition states that the delay of the footwear caused unnecessary pain to his feet and hip "still to this day," Mem. Resp. Mot. Summ. J. 8, ECF No. 27, it is unclear whether Moone continued to request orthopedic shoes after the surgery. Regardless, Moone does not point to any significant post-surgical changes that suggest Dr. Ohai should have reconsidered his opinion regarding orthotics.

held that like treatment for similar symptoms did not constitute deliberate indifference. *E.g.*, *Washington v. Stewart*, No. DKC-15-3181, 2017 WL 550032, at *23–24 (D. Md. Feb. 10, 2017) (finding no deliberate indifference for treatment of hip pain where plaintiff was provided with pain medications and X rays, and referred to an outside orthopedist only once his X rays demonstrated a worsening of his degenerative joint disease); *Dyson v. Wexford Health Sources*, No. TDC-19-0307, 2020 WL 1158791, at *7 (D. Md. Mar. 10, 2020) (dismissing claim of deliberate indifference, despite the fact that an orthopedic consult was initially denied, where medical staff ordered pain medication for arthritis in knee, provided assistive ambulatory devise, ordered X rays, and arranged for consultations with specialists, even though plaintiff sought knee replacement surgery and one expert had discussed it as a potential option, but did not recommend it); *McBee v. Wilson*, No. 3:16CV160, 2017 WL 3841923, at *8 (E.D. Va. Sept. 1, 2017) (finding no deliberate indifference for not providing knee replacement surgery where plaintiff was provided with continuous non-surgical care); *Alvarez v. Wexford Health Sources, Inc.*, No. PX-17-00141, 2020 WL 2526573, at *4 (D. Md. May 18, 2020) ("This Court has consistently held that deferral of surgery in favor of conservative treatment alone does not amount to deliberate indifference."). Moreover, Dr. Ohai characterizes the surgery ultimately provided to Moone as elective, and a failure to provide elective surgery is even less likely to offend the Eighth Amendment. *Martin v. Bowman*, 48

F.3d 1216, 1995 WL 82444, at *4 (4th Cir. Feb. 24, 1995) (unpublished) (finding no deliberate indifference for not providing elective knee surgery).

To be sure, the record reflects that Moone, over a period of about two years, made repeated complaints about hip pain and then pain in his knees, and he repeatedly sought replacement orthopedic shoes. The delays or denials of treatment he believed he should have received (new shoes, hip injections and later, a hip replacement surgery) were no doubt frustrating to Moone.[13] But during the relevant time, Dr. Ohai was involved only in two reviews of Moone's chart and two appointments, and all of the many other appointments Moone had were with other providers, none of whom he has named as defendants. In the two reviews, Dr. Ohai concurred with Moone's request for a hip injection and then ordered X rays, lab work, and a follow-up appointment that others failed to schedule. And during the same two-year period, the undisputed evidence shows that Dr. Ohai provided treatment and made decisions, based on his professional judgment, about what treatment Moone required.

For all of the foregoing reasons, I conclude that Moone has failed to present

---

[13] It appears that there was a lack of communication among the medical staff in failing to promptly set appointments for Moone. In particular, Moone's medical records reflect a number of times when Moone was referred to Dr. Ohai, but no prompt appointment was set. These facts alone do not show an Eighth Amendment violation by Dr. Ohai, however, particularly because Moone has presented nothing to dispute Dr. Ohai's testimony that he was not responsible for reviewing complaints or for making appointments for patients.

sufficient facts on which a fact-finder could rule in his favor.  Accordingly, I will grant Dr. Ohai's motion for summary judgment.

### III.  CONCLUSION.

In accordance with the foregoing, it is **ORDERED** as follows:

1. The Nonmedical Defendants' motion to dismiss, ECF No. 17, is GRANTED; and

2. Defendant Dr. Ohai's motion for summary judgment, ECF No. 22, is GRANTED.

ENTER:   September 29, 2022

/s/  JAMES P. JONES
Senior United States District Judge